The bill alleges that plaintiff contracted with one William Young for the purchase of a tract of land, including a millshoal, at $120, and executed two notes therefor, due at different dates, and the said Young executed his bond for title on the payment of the purchase money; that he cleared the land and built a valuable grist-mill on the same, which did a good business and added at least three hundred dollars to the value of the premises; that plaintiff paid on the first note $53 before it fell due; that he afterwards took up these notes and gave a third note for $67; that he was in the employment of the defendant at the time, and worked for him to pay a part of the note; the amount of work done he does not remember; that plaintiff afterwards bought some beef-cattle of the defendant and gave his note therefor, amounting to $25.60; that, being in difficulties, and fearing that he would be harrassed and his property sold for this debt to Young and the debt to the defendant, it was agreed that plaintiff should pledge the said property to the said Gudger, the defendant, to secure the debt which he owed him and for the balance of the debt to Young, which he, defendant, was to take up; and that these two debts, amounting to $72, were to be paid to defendant in twelve months; that accordingly, Young's debt was satisfied to *Page 145 
him by defendant, and plaintiff became indebted to defendant in the sum of $72.50, and to secure the payment thereof within twelve months, the plaintiff was to assign Young's bond to make title, over to defendant; and the plaintiff did put his name to an assignment prepared by the defendant on the back of the bond; and plaintiff, intending to go to the gold mine and work and raise the money, gave the defendant possession; that he went off to the gold mines and began to (174) work, but was taken sick and was unable to return within the twelve months; that he remained absent for several years, (about 8 in all) and in the mean time defendant improved the property by adding a saw-mill — that he paid, in corn and oats, on the debt, some twenty-five dollars, and that the profits of the mill have been more than sufficient to pay the remainder; that the defendant, in the mean time, got a title from Young, and still holds the same. He alleges further, that he has little knowledge of letters and knows nothing of business and had entire confidence in the defendant, and believed in his profession of kindness, and a disposition to favor him, and signed the endorsement "not knowing but that it fully contained the agreement;" that he has called on the defendant to account for the profits and to convey to him the premises, which he has refused to do.
The bill prays for an account and conveyance.
The defendant, in his answer, denies that he purchased the land in question under any contract or agreement to reconvey. He denies that there was any hardship in the transaction or any fraud or imposition in taking the assignment of the title bond. He denies that plaintiff is illiterate, but says he can read and keep accounts; and that at the time of executing the assignment in question, read the same or had it read to him deliberately and distinctly. He says after the bargain was made and the assignment executed, plaintiff "made some remark complaining of the price which he had agreed to receive for said lands, to which this defendant simply replied that he would take his money and interest if paid to him in twelve months, to which the complainant made no reply whatever." He was, at that time, willing to have received the money and interest, because although he bought the property at a reduced price, he did not particularly need it, and would have taken that amount from the defendant or any one else. Since then, however, he says he has put valuable mills on it, and from a turnpike road being made near it, it has become valuable, so that he is now unwilling to part with it. He denies that the mill put on it by plaintiff was of (175) any value, or that he received any profits from it. He denies that any payments were made to him by plaintiff in oats or any thing else. *Page 146 
Replication and issue. There were proofs taken and the cause being set for hearing was sent to this Court.
To sustain the equity which the bill seeks to set up two things must be alleged and proved, i. e., 1st. That the agreement was, that the interest of the plaintiff in the land should be assigned as a mere security for the debt.2d. That the plaintiff was procured or induced to execute the assignment (which is an absolute one) by fraud, imposition or undue influence, advantage being taken of his necessitous condition.
In respect to the latter, the plaintiff fails, both as to the allegation and as to the proof.
The allegation is simply "and your orator did put his name to an assignment prepared by the said defendant on the back of said bond." The proof is, that after the parties had made their agreement, they went to the house of the witness Green, (who is examined by the plaintiff;) the writing was read by defendant in the presence of the plaintiff; the plaintiff is illiterate and is a bad scribe, but the witness supposed, from what the parties said and did at the time, that the plaintiff understood the nature and extent of his bargain or contract, and still has no reason to doubt it; the witness saw no evidence of any fraud or imposition.
A decree that an absolute assignment shall be converted into, and stand as a mere security for a debt, upon this allegation and this proof, would be at variance with all of the cases decided by this Court, and disturb the doctrine upon this subject which is now settled.
In rescept [respect] to the former, the allegation is full enough; but the answer positively denies that the agreement was that the land (176) should be taken as a security for the debt, and avers that the agreement was for an absolute sale, and that the absolute assignment was drawn and executed in pursuance thereof: and that nothing was said about the plaintiff's being allowed to repay the money and take back the land until after the execution of the assignment. The defendant admits, that "immediately after the execution of the assignment, the plaintiff made some remark, complaining of the price which he had agreed to receive for his land, to which defendant replied that he would take his money and its interest, if paid within twelve months, to which plaintiff made no reply."
So far from falsifying the answer by two witnesses, the plaintiff has not been able to prove by a single witness that, according to the agreement, *Page 147 
in pursuance of which the assignment was executed, the land was to stand as a security for the debt; nor has he been able to prove by a single witness, any admission of the defendant other than that which is set out in the answer, or any act, or fact, inconsistent with it: so the question is after an absolute deed had been executed, is a gratuitous proposition that if the money and interest be paid in twelve months the party may have back the land, sufficient to convert the assignment into a mere security, supposing the proposition to have been assented to?
We were not referred to any case, and we are unable to see any principle upon which such a doctrine can be sustained. The agreement was executed
before the proposition was made; so it did not enter into, or form a part of the agreement, and was merely gratuitous. The plaintiff, if we suppose he assented to it by his silence, was under no kind of obligation to repay the money and interest in twelve months; so there was no mutuality.
Per curiam.
Bill dismissed.
(177)